UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC. § | |
| § | |
| v. § | CIVIL NO. 4:23-CV-108-SDJ |
| § | |
| DAQ'Z CRAZY & WING'Z, LLC, ET AL. § | |

**MEMORANDUM ADOPTING IN PART AND MODIFYING IN PART REPORTS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**

Before the Court are three Reports and Recommendations from the United States Magistrate Judge ("Reports"), (Dkt. #30, #41, #42), this matter having been referred to the Magistrate Judge under 28 U.S.C. § 636. The first Report, (Dkt. #30), recommends granting-in-part Plaintiff's Motion to Strike, (Dkt. #8), and striking from Defendant Raphyael Tyson's Answer, (Dkt. #6), his affirmative defenses of laches, equitable estoppel, unclean hands, failure to mitigate damages, and statute of limitations. The second Report, (Dkt. #41), recommends granting Plaintiff's Motion for Summary Judgment Against Defendant, Raphyael L. Tyson, (Dkt. #28), as to Plaintiff's claim for violations of 47 U.S.C. § 553. The third Report, (Dkt. #42), recommends granting Plaintiff's Motion for Default Judgment Against Defendant, Daq'z Crazy & Wing'z, LLC, (Dkt. #27), as to Plaintiff's claim for violations of 47 U.S.C. § 553. Neither Defendant filed any objections to these three Reports.

The Court is of the opinion that the findings and conclusions of the Magistrate Judge are largely correct. As to the first Report, (Dkt. #30), the Court adopts the Magistrate Judge's Report as the findings and conclusions of the Court. As to the

1

second and third Reports, (Dkt. #41, #42), the Court modifies the Report's findings and conclusions for only the calculations of statutory and enhanced damages. Otherwise, the Court hereby adopts the other findings and conclusions of the second and third Reports, (Dkt. #41, #42), as the findings and conclusions of the Court.

## I. BACKGROUND

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") was granted an "exclusive license to distribute and authorize public display of the *Deontay Wilder vs. Tyson Fury II* boxing match, including all undercard bouts and commentary telecast on February 22, 2020" (the "Program"). (Dkt. #41 at 2). Without a commercial license from Joe Hand, publicly streaming the Program at a commercial establishment would violate 47 U.S.C. § 605 (unauthorized reception of satellite signals) or 47 U.S.C. § 553 (unauthorized reception of cable services). Because Defendants publicly streamed the Program at Daq'z Crazy & Wing'z (the "Establishment") without obtaining that license, Joe Hand brought this lawsuit.

For damages purposes, the following facts are relevant:

- There was no cover charge to enter the Establishment.
- The Program was displayed on two 42-inch televisions.
- Defendants advertised their illicit streaming of the Program on Facebook.
- There is no evidence that food and drinks were priced at a premium because of the Program.
- The Establishment has a capacity of about fifty people. The auditor counted only fourteen to eighteen people at the Establishment when the Program was streaming.
- A commercial license for the Establishment to stream the Program would have cost Defendants $1,450.

- An individual license to stream the event for non-commercial purposes was $79.99.[1]

## II. LEGAL STANDARD

Anyone who violates 47 U.S.C. § 553 "willfully and for purposes of commercial advantage or private financial gain" may be fined up to $50,000 in damages. *Id.* § 553(b)(2). Two types of damages may comprise this fine. First, a court may award either actual damages suffered by the aggrieved party or "statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." *Id.* § 553(c)(3)(A)(i)–(ii). Second, a court may award enhanced damages for willful violations committed for "commercial advantage or private financial gain." *Id.* § 553(c)(3)(B).

For statutory damages, "[c]ourts use various methods to determine what statutory amount is just."[2] *J&J Sports Prods., Inc. v. Kirkpatrick*, No. 4:18-cv-310, 2020 WL 5504469, at *10 (E.D. Tex. Sept. 11, 2020) (quotations omitted). Some courts calculate statutory damages based on the cost of the commercial licensing fee. *See, e.g.*, *J&J Sports Prods., Inc. v. Enola Invs., L.L.C.*, No. H-17-2893, 2019 U.S. Dist. LEXIS 248674, at *9 (S.D. Tex. May 30, 2019), *aff'd*, 795 F.App'x 313 (5th Cir. 2020) (calculating $6,000 in statutory damages by doubling the $3,000 commercial licensing

---

[1] Although this was not part of the record, the Court takes judicial notice of the individual streaming cost from a news article published that same day, available at https://www.usatoday.com/story/sports/boxing/2020/02/22/deontay-wilder-tyson-fury-time-pay-per-view-streaming-info/4838334002/. *See also Joe Hand Promotions, Inc. v. Bonvillain*, No. 13-4912, 2013 WL 5935208, at *2 (E.D. La. Nov. 5, 2013) (taking judicial notice of typical streaming costs for such events from other court decisions).

[2] Because the damages scheme for violating Section 553 tracks with the damages scheme for violating Section 605, the Court finds that the reasoning for calculating damages under Section 605 applies equally to calculating damages under Section 553. *Compare* 47 U.S.C. § 553(c) *with* 47 U.S.C. § 605(e).

fee). Other courts multiply the number of patrons by the cost each patron would "have had to pay to purchase the event for private viewing at a residence." *Joe Hand Promotions, Inc. v. Bonvillain*, No. 13-4912, 2013 WL 5935208, at *2 (E.D. La. Nov. 5, 2013) (multiplying thirty-five patrons by an estimated private-viewing license of $55 to calculate $1,925 in statutory damages). Finally, some courts simply award a flat fee based on the evidence before them. *J&J Sports Prods., Inc. v. Kuo*, No. 07-CA-075, 2007 WL 4116209, at *4 (W.D. Tex. Nov. 15, 2007). This flat fee tends to approach or equal the statutory maximum when the evidence shows that defendants benefited from cover fees and an over-capacity evening of food-and-drink sales. *See, e.g., J&J Sports Prods., Inc. v. Rivera*, No. 4:18-cv-298, 2019 WL 2387397, at *4 (E.D. Tex. Mar. 15, 2019), *report and recommendation adopted*, No. 4:18-cv-298, 2019 WL 1553672 (E.D. Tex. April 10, 2019). No matter which approach is taken, deciding on the proper damages award falls within the district court's discretion. *See generally* 47 U.S.C. § 553(c).

Turning to enhanced damages, a court must find that a defendant willfully violated Section 553 for commercial gain. 47 U.S.C. § 553(c)(3)(B). Because "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems," *Rivera*, 2019 WL 2387397, at *4 (cleaned up), enhanced damages are generally awarded when a violation is shown. *See, e.g., id.*

To decide on the proper damages award, courts consider several factors: "(1) whether the establishment charged a cover to view the event, (2) the number of televisions on which the establishment showed the event, (3) whether the

4

establishment advertised the event, (4) how many people were in attendance, (5) whether the establishment was a repeat offender, and (6) whether the establishment was in an urban area." *Enola Invs.*, 2019 U.S. Dist. LEXIS 248674, at *9. While enhanced damages can be more severe than statutory damages, courts are "mindful that the purpose of willfulness damages is not to put Defendants out of business." *See J&J Sports Prods., Inc. v. Lava Ent. Grp., LLC*, No. 14-CV-441, 2016 WL 11578833, at *5 (W.D. Tex. Apr. 6, 2016). That said, courts routinely award enhanced damages of double or treble the base statutory damages. *See, e.g.*, *Bonvillain*, 2013 WL 5935208, at *3 (double); *Enola Invs.*, 2019 U.S. Dist. LEXIS 248674, at *11 (treble); *Joe Hand Promotions, Inc. v. Garcia*, 546 F.Supp.2d 383, 386 (W.D. Tex. 2008) (slightly more than treble); *Joe Hand Promotions, Inc. v. Immy & Asfo LLC*, No. 4:19-CV-539, 2021 WL 1139748, at *6–7 (E.D. Tex. Jan. 19, 2021), *report and recommendation adopted*, No. 4:19-CV-539, 2021 WL 1123300 (E.D. Tex. Mar. 24, 2021) (treble).

### III. Discussion

**A. Statutory Damages**

Both Reports, (Dkt. #41, #42), calculate damages using the same method. *E.g.*, (Dkt. #42 at 8–10). Each begins by acknowledging that the commercial licensing fee for Defendants would have been $1,450. *E.g.*, (Dkt. #42 at 9). Next, both Reports note that Joe Hand submitted evidence of Defendants advertising similar events for two other allegedly unlicensed programs. *E.g.*, (Dkt. #42 at 9). Given that evidence, the Reports found that Joe Hand had proven three violations of Section 553 and awarded $1,450 for each violation, totaling $4,350. *E.g.*, (Dkt. #41 at 9). To ensure proper

5

deterrence, however, the Report increased these damages to $10,000—the statutory maximum—citing to *Rivera* in support. *E.g.*, (Dkt. #41 at 10).

The Court agrees that the commercial licensing fee for Defendants would have been $1,450, and thus Joe Hand is entitled to at least this amount in statutory damages. But the Court believes that the Reports should be modified as to the damages for the other alleged statutory violations because Joe Hand failed to plead these violations in the complaint and provided no evidence that the alleged violations occurred.

At the outset, since neither of these purported violations were alleged in the complaint, the Court believes that they would not be considered "violations involved in the action." 47 U.S.C. § 553(c)(3)(A)(ii). And while Joe Hand provided evidence that Defendants advertised for these events, evidence of advertisement is not the same as evidence of violation. Thus, the Court does not have the requisite proof to infer that the alleged violations occurred. As a result, the Court awards statutory damages of $1,450 for Joe Hand's properly plead and supported Section 553 violation.

Alternative methods of calculating statutory damages further support this award. For example, if the Court calculated statutory damages based on the cost for each patron to purchase a private-viewing license, it would have awarded $1,440[3]— only $10 shy of the Court's previous calculation. As a result, the Court believes $1,450 is an appropriate base award. And to deter future behavior—in line with other courts in this circuit—the Court doubles the base damages for a total of $2,900 in statutory

---

[3] This figure is calculated by multiplying the maximum number of patrons observed by the auditor (18) by the private-viewing-license fee for the event ($80).

6

damages. *See, e.g.*, *Enola Invs.*, 2019 U.S. Dist. LEXIS 248674, at *9 (doubling statutory damages for deterrence); *Immy & Asfo LLC*, 2021 WL 1139748, at *6 (same).

This Court finds that *Rivera* does not apply here because this case lacks two facts that supported the court's award of the maximum statutory damages there: (1) the establishment charged a cover fee for each patron; and (2) the event was a huge success, with the establishment near or exceeding capacity while the illicit program was streaming. *Rivera*, 2019 WL 2387397, at *1. By contrast, Defendants here charged no cover fee, and the establishment was only at about one-third capacity.

**B. Enhanced Damages**

The Court agrees that an award of double or triple the statutory damages would be appropriate given other enhanced-damages awards in this circuit. *E.g.*, *Bonvillain*, 2013 WL 5935208, at *3 (double); *Enola Invs.*, 2019 U.S. Dist. LEXIS 248674, at *11 (treble); *Garcia*, 546 F.Supp.2d at 386 (about treble); *Immy & Asfo LLC*, 2021 WL 1139748, at *7 (treble). The most factually similar of these cases is *Bonvillain*. There, like here, there was no cover fee, the event was streamed on two television sets, the bars were under capacity (one-third capacity here, one-half capacity there), and the commercial license fees are similar ($1,450 here, $1,100 there). *Bonvillain*, 2013 WL 5935208, at *1. Since the *Bonvillain* Court awarded enhanced damages of double the statutory damages, the Court does so here as well. This brings the enhanced damages here to $5,800.

In total, the Court thus awards $8,700 in statutory and enhanced damages for Defendants' violation of Section 553.

## IV. CONCLUSION

It is therefore **ORDERED** that the first Report and Recommendation of the United States Magistrate Judge, (Dkt. #30), which recommends granting-in-part Plaintiff's Motion to Strike, is **ADOPTED**. It is further **ORDERED** that Plaintiff's Motion to Strike, (Dkt. #8), is **GRANTED-IN-PART** and **DENIED-IN-PART**. It is further **ORDERED** that the affirmative defenses in Defendant Raphyael Tyson's Answer for laches, equitable estoppel, unclean hands, failure to mitigate damages, and statute of limitations, (Dkt. #6), are **STRICKEN**.

It is further **ORDERED** that the second Report and Recommendation of the United States Magistrate Judge, (Dkt. #41), which recommends granting Plaintiff's Motion for Summary Judgment Against Defendant, Raphyael L. Tyson, is **ADOPTED-IN-PART** and **MODIFIED-IN-PART**. For clarity, the Court **ADOPTS** the following findings and conclusions:

- Plaintiff has proven that there is no genuine dispute of material fact that Defendant Tyson engaged in the unauthorized exhibition of the Program in violation of 47 U.S.C. § 553.
- Plaintiff has proven that there is no genuine dispute of material fact that Defendant Tyson's violation of 47 U.S.C. § 553 was willful and for commercial advantage or private financial gain.
- Plaintiff has proven that there is no genuine dispute of material fact that Defendant Tyson is vicariously liable for violations of Section 553 that occurred at the Establishment during exhibition of the Program.
- Summary judgment for violation of 47 U.S.C. § 553 should be granted in favor of Plaintiff.
- Plaintiff shall be awarded reasonable and necessary attorney's fees and costs, to be determined at a later date. Plaintiff may file for attorney's fees under Rule 54(d)(2) within fourteen days of the Court's entry of judgment against Defendant Tyson.

The Court **MODIFIES** this Report by concluding that a total of $8,700 in damages should be awarded: $2,900 in statutory damages; $5,800 in enhanced damages.

It is further **ORDERED** that Plaintiff's Motion for Summary Judgment Against Defendant, Raphyael L. Tyson, (Dkt. #28), is **GRANTED-IN-PART**, consistent with the above findings.

It is further **ORDERED** that the third Report and Recommendation of the United States Magistrate Judge, (Dkt. #42), which recommends granting Plaintiff's Motion for Default Judgment Against Defendant, Daq'z Crazy & Wing'z, LLC, is **ADOPTED-IN-PART** and **MODIFIED-IN-PART**. For clarity, the Court **ADOPTS** the following findings and conclusions:

- Plaintiff has proven that a default judgment is procedurally warranted.
- Plaintiff has proven that Defendant Daq'z Crazy & Wing'z, LLC engaged in the unauthorized exhibition of the Program in violation of 47 U.S.C. § 553.
- Plaintiff has proven that Defendant Daq'z Crazy & Wing'z, LLC's violation of 47 U.S.C. § 553 was willful and for commercial advantage or private financial gain.
- Plaintiff has pleaded a sufficient basis to enter a default judgment against Defendant Daq'z Crazy & Wing'z, LLC for violating 47 U.S.C. § 553.
- Plaintiff shall be awarded reasonable and necessary attorney's fees and costs, to be determined at a later date. Plaintiff may file for attorney's fees under Rule 54(d)(2) within fourteen days of the Court's entry of judgment against Defendant Daq'z Crazy & Wing'z, LLC.

The Court **MODIFIES** the Report by concluding that a total of $8,700 in damages should be awarded: $2,900 in statutory damages; $5,800 in enhanced damages.

9

It is further **ORDERED** that Plaintiff's Motion for Default Judgment Against Defendant, Daq'z Crazy & Wing'z, LLC, (Dkt. #27), is consistent with the above findings.

It is further **ORDERED** that the Plaintiff may file for attorney's fees under Rule 54(d)(2) within fourteen days of the Court's entry of judgment against Defendants.

**So ORDERED and SIGNED this 27th day of February, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE